# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### MACON DIVISION

| | |
|---|---|
| James Schreiber, Jr., and Brenda Schreiber, | * |
| | * |
| | * |
| Plaintiffs, | * |
| | * |
| v. | * |
| | * |
| Jamie "James" P. Key, | * |
| | * |
| Defendant. | * |
| _____ | * |

## Complaint for Damages and Injunctive Relief

### Nature of Action

1.

This suit seeks to remedy Jamie Key's Clean Water Act violations and seeks compensatory and punitive damages for Jamie Key's continuing violations of the Schreibers' property rights.

### Jurisdiction

2.

This Court has jurisdiction of the Schreibers' Clean Water Act claim under 28 U.S.C. § 1331 and 33 U.S.C. § 1365(a) and has supplemental jurisdiction of the state law claims under 28 U.S.C. § 1367.

## Pre-Suit Notice

### 3.

James Schreiber, Jr., and Brenda Schreiber complied with the Clean Water Act's pre-suit notice requirements. 33 U.S.C. § 1365(b)(1)(A); 40 C.F.R. Part 135, Subpart A.

### 4.

When the alleged violator is an individual, service of notice "shall be accomplished by certified mail addressed to the owner" and "shall be deemed to have been served on the postmark date if mailed." 40 C.F.R. § 135.2(a)(1), (c).

### 5.

The Schreibers sent a pre-suit notice letter by certified mail addressed to the site owner more than 60 days before filing this suit (Doc. No. 1-1).

### 6.

The pre-suit notice letter identified the effluent standards and limitations that were violated, the activities constituting the violations, the person responsible for the violations, the location of the violations, the dates of the violations, the names, address, and telephone number of the persons giving notice, and the name, address, and telephone number of the undersigned counsel. 40 C.F.R. § 135.3.

### 7.

Jamie Key owns the site that is the source of the Clean Water Act violations set forth in this suit.

8.

On the Notice of Intent for coverage under the Clean Water Act permit authorizing storm water discharges from the construction site, Jamie Key identified himself as the owner and identified the owner's address as 2040 Dally Trail, Covington, Georgia 30014.

9.

Jamie Key resides at 2040 Dally Trail, Covington, Georgia 30014.

10.

Jamie Key resided at 2040 Dally Trail, Covington, Georgia 30014 when the Schreibers sent their pre-suit notice letter.

11.

The Schreibers sent the pre-suit notice letter by certified mail to 2040 Dally Trail, Covington, Georgia 30014, postmarked March 9, 2023 (Doc. No. 1-2).

12.

Notice of attempted delivery was left for Mr. Key on March 10, 2023. A reminder to schedule redelivery was provided to Mr. Key on March 15, 2023. The pre-suit notice letter was returned to sender as unclaimed on March 27, 2023 (Doc. No. 1-3).

13.

The Schreibers also sent a copy of the pre-suit notice letter by priority mail to Mr. Key at 2040 Dally Trail, Covington, Georgia 30014. The priority mail was postmarked March 9, 2023, and was delivered on March 10, 2023 (Doc. No. 1-2 and 1-4).

14.

Copies of the pre-suit notice letter were sent by certified mail to the Administrator of the Environmental Protection Agency, the Region 4 Regional Administrator of the Environmental Protection Agency, and the Director of the Georgia Environmental Protection Division. 40 C.F.R. § 135.2(a)(1) (Doc. No. 1-2 and 1-5).

## Venue

15.

Venue is proper in the Middle District of Georgia under 28 U.S.C. §1391(b)(2) and 33 U.S.C. § 1365(c)(1) because the source of the Clean Water Act violations is in this judicial district.

## Parties

16.

James Schreiber, Jr., and Brenda Schreiber own Parcels 110C045 and 110C047 on Lake Sinclair in Putnam County, Georgia. The Schreibers' property and two lake coves adjoining their property have been and continue to be polluted by sediment and storm water runoff from the Crooked Creek development. Polluted storm water runoff interferes with the Schreibers' use and enjoyment of their property and lessens their aesthetic enjoyment of Lake Sinclair. These injuries are likely to be redressed by the relief requested in this suit.

17.

Jamie P. Key (also known as James P. Key) is the owner, operator, developer, and primary permittee for the 9.7-acre Crooked Creek development in Putnam County, Georgia.

## The Facts

18.

Jamie Key directs, participates in, and exercises control over clearing, grading, and development activities at the Crooked Creek development.

19.

Jamie Key directs, participates in, and exercises control over development activities that have concentrated and collected storm water and caused it to be discharged upon the Schreibers' property in significantly greater quantities than the amount that historically flowed by the natural force of gravity.

20.

Storm water discharges from the Crooked Creek development site are directed into a creek, across the Schreibers' parcels, and into Lake Sinclair.

21.

Storm water discharges associated with construction activity at the Crooked Creek development site are polluting waters of the United States, including Lake Sinclair and a creek that flows from the development site into Lake Sinclair.

<div style="text-align: center;">22.</div>

Jamie Key has continually failed to comply with best management practices for erosion control at the Crooked Creek development site.

<div style="text-align: center;">23.</div>

Jamie Key's refusal to comply with best management practices for erosion control is polluting the creek, Lake Sinclair, and the Schreibers' property.



<div style="text-align: center;">24.</div>

Turbidity and sedimentation caused by Jamie Key's refusal to comply with best management practices for erosion control harms aquatic life in the creek and Lake Sinclair.

<center>25.</center>

The Schreibers attempted to resolve this dispute without suing.

<center>26.</center>

Jamie Key forced the Schreibers to sue to enforce the Clean Water Act and to seek just and adequate compensation for the damage to their property.

## Count 1 – Violation of Clean Water Act

<center>27.</center>

The Clean Water Act prohibits the discharge of pollutants – including storm water runoff from construction sites with at least one acre of land disturbance – to waters of the United States except in compliance with a permit. 33 U.S.C. §§ 1311(a), 1342(p) 1362(12), 40 C.F.R. §§ 122.1(b)(1), 122.2, 122.26(b)(14)(x)

<center>28.</center>

Storm water discharges from construction sites for common developments with at least one acre of land disturbance are regulated by a General Permit issued by the Georgia Environmental Protection Division (*Authorization to Discharge Under the National Pollutant Discharge Elimination System, Storm Water Discharges Associated with Construction Activity for Common Development Projects, General Permit No. GAR 100003*, effective August 1, 2018 ("General Permit")).

<center>29.</center>

The Clean Water Act prohibits discharging storm water from a construction site with at least one acre of land disturbance without a permit. 33 U.S.C. §§ 1311(a), 1342(p) 1362(12), 40 C.F.R. § 122.26(b)(14)(x).

<center>30.</center>

Jamie Key discharged polluted storm water runoff from the Crooked Creek development construction site into jurisdictional waters of the United States before obtaining authorization under a permit.

<center>31.</center>

Most of the Crooked Creek development site was cleared and bulldozed in September 2021.

<center>32.</center>

Storm water discharges from the Crooked Creek development site were not authorized under the General Permit until March 10, 2022.

<center>33.</center>

During that period the site had no erosion control.

<center>34.</center>

On each day it rained at least a half-inch during that period, polluted storm water from the development site was discharged into the jurisdictional creek and into both coves on Lake Sinclair.

<center>35.</center>

Polluted storm water was discharged from the Crooked Creek development site into jurisdictional waters without a permit in violation of the General Permit on these dates:

10-6-2021

10-8-2021

10-29-2021

12-8-2021

12-19-2021

12-31-2021

1-3-2022

1-10-2022

1-16-2022

2-4-2022

2-22-2022

<div align="center">36.</div>

Jamie Key submitted a Notice of Intent for coverage under the General Permit on February 24, 2022. Coverage under the General Permit was authorized on March 10, 2022, and Putnam County issued a land disturbance permit on March 11, 2022.

<div align="center">37.</div>

Section 301(a) of the Clean Water Act prohibits discharging storm water from a construction site without complying with a permit. 33 U.S.C. § 1311(a).

<div align="center">38.</div>

The General Permit requires permittees to comply with an Erosion, Sedimentation and Pollution Control Plan ("Erosion Control Plan"). *General Permit*, Part II.B.1.g; Part IV.(iv).

39.

The General Permit also requires permittees to comply with best management practices for erosion control ("BMPs") as specified in the Manual for Erosion and Sediment Control in Georgia ("Manual"). *General Permit*, Parts I.B.1, III.D, and IV.D.

40.

"Failure to properly design, install, or maintain best management practices shall constitute a violation of the General Permit for each day on which such failure occurs." *General Permit*, Part III.D.3.

41.

The General Permit and the Manual require silt fence to be installed around the site's perimeter before any other construction activities. *General Permit*, Part III.D.2.

42.

The Crooked Creek Erosion Control Plan requires silt fence around the site's perimeter. *Erosion Control Plan*, Sheet C-401.

43.

The Erosion Control Plan also states that "the construction of the site will commence with the installation of erosion control measures sufficient to control sediment deposits and erosion" and that "the escape of sediment from the site shall be prevented by the installation of erosion and sediment control measures and practices prior to land disturbing activities." *Erosion Control Plan*, Sheet C-101, General Notes 2 and 4.

<center>44.</center>

Even after obtaining authorization to discharge under the General Permit on March 10, 2022, Jamie Key undertook clearing and other construction activity without installing any silt fence until June 1, 2022. This violated the General Permit on each day from March 11, 2022, through May 31, 2022.

<center>45.</center>

The General Permit requires a "sediment basin" to provide at least 67 cubic yards of storage per acre drained from on-site disturbed areas until final stabilization of the site, "or equivalent control measures." *General Permit*, Part IV.D.3.a.(3), Manual, p. 6-10.

<center>46.</center>

Instead of sediment basins, Crooked Creek has two "temporary sediment traps," which are small temporary ponds that are supposed to drain disturbed areas so sediment can settle out. *Manual*, p. 6-185.

<center>47.</center>

Storm water from these sediment traps is conveyed into a spring-fed creek and Lake Sinclair

<center>48.</center>

The temporary sediment traps are identified on the Crooked Creek Erosion Control Plan as "Sd4-C." *Erosion Control Plan*, Sheet C-401.

<center>49.</center>

The Erosion Control Plan states, "the principle feature distinguishing a temporary sediment trap from a temporary sediment basin is the lack of a pipe or riser." *Erosion Control Plan*, Sheet C-401 legend.

<div align="center">50.</div>

The Crooked Creek sediment traps have no pipe or riser.

<div align="center">51.</div>

The Manual identifies "Sd4-C" as a temporary sediment trap with a rock outlet. The Manual states Sd4-C sediment traps "can be used for drainage area up to 5 acres." *Manual*, p. 6-186.

<div align="center">52.</div>

Sediment trap B for Crooked Creek is designed to store sediment from 7.1 disturbed acres. *Erosion Control Plan*, Sheet C-401.

<div align="center">53.</div>

This violates the General Permit on each day since March 11, 2022.

<div align="center">54.</div>

The Manual states the length to width ratio for sediment traps "must be greater than (2:1) (L:W) for the principal flowpaths in order to maximize residence time of storm water within the sediment trap." *Manual*, p. 6-185.

<div align="center">55.</div>

The length to width ratio for the Crooked Creek temporary sediment traps is less than 2:1. This violates the General Permit on each day since March 11, 2022.

<div align="center">56.</div>

Storm water runoff also bypasses the sediment traps.

<div align="center">57.</div>

Bypass runoff from lots 9 and 10 is conveyed into the creek.

<center>58.</center>

Bypass runoff from lots 9, 10, and 11 is conveyed into Lake Sinclair.

<center>59.</center>

The General Permit requires the design professional who prepared the Erosion Control Plan to inspect the sediment storage requirements within seven days after installation. *General Permit*, Part III.D.2.

<center>60.</center>

No inspection was performed to confirm the sediment traps were constructed to hold the required sediment storage.

<center>61.</center>

The General Permit requires sediment to be removed from sediment basins to restore the original design volume when there is no more than 22 cubic yards of sediment for each cleared acre of drainage area. *General Permit*, Part IV.D.3.a.(3).

<center>62.</center>

The Manual requires sediment to be removed from sediment traps when sediment has accumulated in one-third of the total storage volume. *Manual*, p. 6-185.

<center>63.</center>

Sediment exceeding 22 cubic yards for each cleared acre – and exceeding one-third of the storage volume – has accumulated in the sediment traps since July 15, 2022. Sediment has not been removed to restore the original design volume. This violates the General Permit on each day since July 15, 2022.

64.

The Manual requires marked stakes at the sediment trap's rock outlet, so site operators know when to remove accumulated sediment. *Manual*, p. 6-185.

65.

The Crooked Creek sediment traps don't have marked posts. This violates the General Permit on each day since May 15, 2022.

66.

The installed sediment traps appear to be smaller than shown on the plans and smaller than required to hold 67 cubic yards of storage per acre drained from on-site disturbed areas. This violates the General Permit for each day since May 15, 2022.

67.

The Manual states a temporary sediment trap "has a life span of 1 year." *Manual*, p. 6-186.

68.

The Notice of Intent for coverage under the General Permit stated the project would be completed in three months, but construction activity will not be completed within one year after the sediment traps were installed.

<center>69.</center>

The Erosion Control Plan includes diversions for conveying storm water to sediment trap A and sediment trap B. Because these diversions weren't installed (or if they were installed, they weren't maintained), storm water from portions of Crooked Creek development bypasses the sediment traps and is discharged offsite. This violates the General Permit for each day since March 11, 2022.

<center>70.</center>

Storm water also bypasses the sediment traps because Jamie Key installed storm drain inlets and culverts not on the Erosion Control Plan. These were installed on and under the driveways for lot 4 (101 Crooked Creek Drive), lot 5 (105 Crooked Creek Drive), lot 6 (107 Crooked Creek Drive), lot 7 (113 Crooked Creek Drive), and lot 8 (119 Crooked Creek Drive). Instead of being conveyed to the sediment traps as designed, polluted storm water is conveyed from the culverts to a ditch along Crooked Creek Drive, and then discharged offsite from Lot 11. This bypass storm water flows into a cove on Lake Sinclair that adjoins Parcel 110C047.

<center>71.</center>

Because these changes to the Plan have a significant effect on best management practices with a hydraulic component, Jamie Key had to submit a revised plan to Putnam County for approval. *Manual*, p 4-4.

72.

The culverts were installed under the driveways before May 29, 2022. Jamie Key's failure to obtain approval for this revision violates the General Permit for each day since culverts were installed under the driveway.

73.

The Erosion Control Plan states, "Mulch or temporary grassing shall be applied to all exposed areas within 14 days of disturbance." *Erosion Control Plan*, Sheet C-101, maintenance note 8; See also, Sheet C-401, note 12 and *Manual* at pp. 6-13, 6-27, and 6-29.

74.

The Manual similarly states, "Mulch, temporary vegetation, or permanent vegetation shall be completed on all exposed areas within 14 days after disturbance." *Manual*, p. 6-9.

75.

The Erosion Control Plan states, "Mulch where necessary will be applied at a rate of 2 ½ tons per acre." *Erosion Control Plan*, Sheet C-401, ES&PC note 9.

76.

The Manual includes specifications for stabilizing disturbed areas with temporary vegetation. *Manual*, pp. 6-29 – 6-33.

<center>77.</center>

Mulch or vegetation wasn't placed on the site until early March 2023, or if applied wasn't applied at the required rate and specifications. This violated the General Permit on each day from March 11, 2022, until February 28, 2023. Portions of the site still have no mulch or vegetation, or if applied wasn't applied at the required rate and specifications. This violated the General Permit for each day since March 11, 2022.

<center>78.</center>

The Erosion Control Plan states, "Permanent vegetation shall be applied immediately to rough graded areas that will be undisturbed for longer than six months. *Erosion Control Plan*, Sheet C-101, maintenance note 9.

<center>79.</center>

The Manual similarly states, "permanent vegetation shall be planted if the area is to be left undisturbed for greater than six months." *Manual*, pp. 6-9, 6-13, 6-27, and 6-29.

<center>80.</center>

Crooked Creek development was rough graded before May 29, 2022, and left undisturbed for greater than six months but permanent (or temporary) vegetation was not planted. This violates the General Permit for each day since May 29, 2022.

<center>81.</center>

The General Permit prohibits construction activity within 25-feet of the banks of State waters, unless the EPD Director issues a variance. *General Permit*, Part IV.(i).

## 82.

The creek below sediment trap B is State waters. Crooked Creek construction activity, including clearing and grading, encroached within the 25-foot buffer without a variance. Encroachment into the buffer violates the General Permit for each day since March 11, 2022.

## 83.

The General Permit requires phased erosion control plans, including "(1) initial sediment storage requirements and perimeter control BMPs, (2) intermediate grading and drainage BMPs, and (3) final BMPs." The plan can combine all best management practices for erosion control into one phase if there is no mass grading and if BMPs are the same for each phase. *General Permit*, Part IV.D.3.

## 84.

The Crooked Creek site was mass graded, but the Erosion Control Plan didn't include phases for initial, intermediate, and final BMPs. This violates the General Permit for each day since March 11, 2022.

## 85.

The Erosion Control Plan had to show "Hydrology study and maps of drainage basins for both the pre- and post-developed conditions." *Erosion Control Plan*, Sheet C-101 (note 44 on original plan, note 46 on revised plan).

## 86.

The Erosion Control Plan did not show a hydrology study or drainage basin map. This violates the General Permit for each day since March 11, 2022.

<center>87.</center>

The General Permit states that a discharge of storm water runoff from disturbed areas where best management practices have not been properly designed, installed, and maintained shall constitute a separate violation for each day on which such discharge results in the turbidity of receiving water being increased by over 25 nephelometric turbidity units ("ntu") for waters supporting warm water fisheries. *General Permit*, Part III.D.4.

<center>88.</center>

Lake Sinclair and the creek that flows into Lake Sinclair are waters supporting warm water fisheries. DNR Rule 391-3-6-.03.

<center>89.</center>

Storm water discharges from Crooked Creek development caused the turbidity in the jurisdictional creek and Lake Sinclair to increase by over 25 ntu when best management practices were not properly installed or maintained, violating the General Permit, on these dates:

5-24-2022

5-26-2022

5-27-2022

5-31-2022

6-3-2022

6-16-2022

7-8-2022

7-9-2022

7-14-2022

8-4-2022

8-12-2022

8-20-2022

8-21-2022

8-25-2022

8-26-2022

9-15-2022

11-11-2022

11-12-2022

11-27-2022

11-30-2022

12-6-2022

12-10-2022

12-15-2022

1-4-2023

1-13-2023

2-3-2023

2-11-2023

2-12-2023

<div align="center">90.</div>

A discharge of storm water runoff from disturbed areas where best management practices have not been properly designed, installed, and maintained shall constitute a separate violation for each day on which such condition results in the turbidity of the discharge exceeding the value from Appendix B of the General Permit. *General Permit*, Part III.D.5.

<center>91.</center>

The Appendix B turbidity discharge limit for Crooked Creek
development is 75 ntu. *Erosion Control Plan*, Sheet C-201.

<center>92.</center>

Failing to properly install or maintain best management practices caused
the storm water discharge from Crooked Creek development to exceed
75 ntu, violating the General Permit, on these dates:

5-24-2022

5-26-2022

5-27-2022

5-31-2022

6-3-2022

6-16-2022

7-8-2022

7-9-2022

7-14-2022

8-4-2022

8-12-2022

8-20-2022

8-21-2022

8-25-2022

8-26-2022

9-15-2022

11-11-2022

11-12-2022

11-27-2022

11-30-2022

12-6-2022

12-10-2022

12-15-2022

1-4-2023

1-13-2023

2-3-2023

2-11-2023

2-12-2023

93.

The General Permit states it doesn't authorize storm water discharges which violate Georgia's in-stream water quality standards. *General Permit*, Part I.C.4.

94.

Storm water discharges from a construction site that are not authorized under the General Permit violate Section 301(a) of the Clean Water Act.

95.

Georgia's water quality standards require surface waters to be free from "turbidity which results in a substantial visual contrast in a water body due to a man-made activity." Georgia DNR Rule 391-3-6-.03(5)(d).

96.

Storm water from Crooked Creek development caused turbidity resulting in substantial visual contrast in the jurisdictional creek and Lake Sinclair, violating Section 301(a) of the Clean Water Act, on these dates:

10-6-2021

10-8-2021

10-29-2021

12-8-2021

12-19-2021

12-31-2021

1-3-2022

1-10-2022

1-16-2022

2-4-2022

2-22-2022

3-12-2022

3-17-2022

3-24-2022

4-1-2022

4-6-2022

4-7-2022

4-17-2022

5-24-2022

5-26-2022

5-27-2022

5-31-2022

6-3-2022

6-16-2022

7-8-2022

7-9-2022

7-14-2022

8-4-2022

8-12-2022

8-20-2022

8-21-2022

8-25-2022

8-26-2022

9-15-2022

11-11-2022

11-12-2022

11-27-2022

11-30-2022

12-6-2022

12-10-2022

12-15-2022

1-4-2023

1-13-2023

2-3-2023

2-11-2023

2-12-2023

<div align="center">97.</div>

The General Permit requires sampling the outfalls below sediment trap A and sediment trap B during the first rain of at least 0.5 inches after all clearing and grubbing operations have been completed, but before mass grading is completed, and to submit the sampling to EPD by the fifteenth day of the following month. *General Permit*, Part IV.D.6.d.3.a; Part IV.E.

<div align="center">98.</div>

This sampling wasn't collected or wasn't submitted to EPD.

<div align="center">99.</div>

The General Permit requires sampling the outfalls below sediment trap A and sediment trap B during the first rain of at least 0.5 inches after mass grading has been completed or 90 days after the first sampling event, and to submit the sampling to EPD by the fifteenth day of the following month. *General Permit*, Part IV.D.6.d.3.b.

<div align="center">100.</div>

This sampling wasn't collected or wasn't submitted to EPD.

<div align="center">101.</div>

If best management practices for erosion control were not properly designed, installed, and maintained when sampling required by Parts IV.D.6.d.3.a and IV.D.6.d.3.b were collected, additional turbidity samples must be taken "during each subsequent rain event that reaches or exceeds 0.5 inch during normal business hours until the selected turbidity standard is attained, or until post-storm event inspections determine that BMPs are properly designed, installed and maintained." *General Permit*, Part IV.D.6.d.3.c.

<p style="text-align: center">102.</p>

Because BMPs were improperly designed, installed, and maintained throughout the project, Jamie Key was required to collect samples below sediment trap A and sediment trap B during each rain event that reached or exceeded 0.5 inch during normal business hours, and to submit the sampling to EPD by the fifteenth day of the following month. *General Permit*, Part IV.E.

<p style="text-align: center">103.</p>

This sampling wasn't collected or submitted to EPD. The failure to collect these samples violates the General Permit on these dates:

5-26-2022

5-27-2022

5-31-2022

6-3-2022

6-16-2022

7-8-2022

7-14-2022

8-4-2022

8-12-2022

8-25-2022

8-26-2022

9-15-2022

11-11-2022

11-30-2022

12-6-2022

12-15-2022

1-4-2023

1-13-2023

2-3-2023

<div align="center">104.</div>

The failure to submit required sampling results to EPD violates the
General Permit on these dates:

6-15-2022

7-15-2022

8-15-2022

9-15-2022

10-15-2022

12-15-2022

1-15-2023

2-15-2023

<div align="center">105.</div>

Jamie Key had to document all known permit violations and to submit a
summary of violations to Georgia Environmental Protection Division
within 14 days. *General Permit*, Part V.A.2.

<div align="center">106.</div>

Jamie Key didn't notify EPD of any permit violations.

## 107.

The Clean Water Act authorizes a citizen suit against any person alleged to be in violation of an "effluent standard or limitation," which includes "a permit or condition of a permit" issued under section 402 of the Clean Water Act. 33 U.S.C. § 1365(a)(1), (f)(7).

## 108.

The General Permit was issued under section 402 of the Act. 33 U.S.C. § 1342(p); 40 C.F.R. § 122.26(b)(14)(x).

## 109.

Jamie Key has discharged and continues to discharge pollutants into waters of the United States without complying with the General Permit.

## 110.

Jamie Key has violated and is in violation of the General Permit and section 301 of the Clean Water Act. 33 U.S.C. § 1311(a).

## 111.

As the owner, operator, and primary permittee under the General Permit for Crooked Creek, Jamie Key is responsible for each violation of the General Permit until responsibility for the site is properly terminated. *General Permit*, Parts 1.E. and V.A; Permittee NOI Number GAR189761-V1.

## 112.

Storm water discharges from Crooked Creek development are continuing.

<div align="center">113.</div>

Jamie Key exercises control over the development and its storm water drainage system and has the capacity to prevent and abate discharges of pollutants into the creek and Lake Sinclair.

<div align="center">**Count 2 – Trespass**</div>

<div align="center">114.</div>

Jamie Key's development activities interfere with the Schreibers' right to enjoy their property.

<div align="center">115.</div>

Jamie Key has knowingly, willfully, and intentionally discharged excessive volumes of water, eroded soils, silt, sediment, muddy water, and other pollutants onto the Schreibers' property and violated the Schreibers' right to exclusive possession of their property.

<div align="center">116.</div>

Jamie Key wasn't authorized to invade the Schreibers' property rights.

<div align="center">117.</div>

The discharge of excessive water, sediment, silt, turbidity, and muddy water onto the Schreibers' property constitutes a trespass for which the Schreibers' are entitled to compensation. O.C.G.A. § 51-9-1.

## Count 3 – Nuisance

### 118.

Jamie Key's land disturbance and development activities on the Crooked Creek development site have resulted in the continuous and excessive discharge of water, sediment, silt, turbidity, and muddy water from the development site and onto the Schreibers' property.

### 119.

These continuous and excessive discharges have caused damage to the Schreibers' and their property and have interfered with the Schreibers' full use and enjoyment of their property as they see fit. That damage to the Schreibers' and their property is unreasonable.

### 120.

The excessive discharge of water, sediment, silt, turbidity, and muddy water onto the Schreibers' property causes hurt, inconvenience, and damage to the Schreibers.

### 121.

Jamie Key's continuous and excessive discharges of water, sediment, silt, turbidity, and muddy water from the Crooked Creek development site and onto the Schreibers' property constitutes a continuing and abatable nuisance for which the Schreibers' are entitled to compensation. O.C.G.A. § 41-1-1.

## Count 4 – Negligence

### 122.

Jamie Key, as the owner and developer of the Crooked Creek development site, has a duty to use and develop the land in a manner that does not injure the property of downstream landowners.

### 123.

Jamie Key has a duty not to create conditions resulting in the continuous and excessive discharge of water, sediment, silt, turbidity, and muddy water onto the Schreibers' property.

### 124.

Jamie Key breached his duties by developing the Crooked Creek development site in a manner that has caused the continuous and excessive discharge of water, sediment, silt, turbidity, and muddy water from the development site and onto the Schreibers' property.

### 125.

Jamie Key's violations of erosion control laws is evidence of negligence per se.

### 126.

Jamie Key's actions caused damage to the Schreibers and their property, for which the Schreibers' are entitled to compensation.

## Count 5 – Compensation for Litigation Expenses

### 127.

Jamie Key has acted in bad faith, has been stubbornly litigious, and has caused the Schreibers unnecessary trouble and expense, for which the Schreibers are entitled to recover the expenses of litigation, including reasonable attorney's fees and expert witness fees. O.C.G.A. § 13-6-11.

## Count 6 – Punitive Damages

### 128.

Before doing any land clearing, grading, and other construction activity at the Crooked Creek development site, it was foreseeable that the damage that has been caused to the Schreibers' property would result from the way the Crooked Creek site was developed.

### 129.

These foreseeable impacts could have been avoided but Jamie Key intentionally chose to develop the site in the manner described above.

### 130.

Even after receiving notice that his development activities were causing excessive water, sediment, silt, turbidity, and muddy water to be discharged onto the Schreibers' property and into Lake Sinclair, Jamie Key refused to take action to prevent the ongoing discharge of excessive water, sediment, silt, turbidity, and muddy water onto the Schreibers' property.

## 131.

Jamie Key's conduct has been and continues to be wanton and reckless, and his conduct manifests a conscious indifference to the damaging consequences.

## 132.

Jamie Key's conduct warrants the imposition of punitive damages. O.C.G.A. § 51-12-5.1.

## Count 7 – Injunctive Relief Sought Against Property

### 133.

Jamie Key's development activities have created a continuing, abatable trespass and nuisance causing irreparable harm for which the Schreibers have no adequate remedy at law.

### 134.

The Schreibers seek a permanent injunction that requires the parcels identified as Lots 1, 2, 4, 5, 6, 7, 8, 9, 10, and 11 on the Crooked Creek development Erosion Control Plans to be altered so that the Schreibers' property is not damaged by storm water runoff from the development.

### 135.

The Schreibers seek a permanent injunction to ensure compliance with the following conditions for Lots 1, 2, 4, 5, 6, 7, and 8 in Crooked Creek development so that the Schreibers' property is not damaged by storm water runoff from these lots: a) each Lot shall be designed to include gutters and downspouts that are engineered to capture rainwater; b) rainwater shall be directed through below grade drain tiles for collection

in underground cisterns on each Lot (which may be used for irrigation, car washing, and other outdoor uses); and c) an overflow orifice shall be installed which controls velocity from each cistern and is tied into a common bio-retention area or retention area for the entire development.

136.

The Schreibers seek a permanent injunction to ensure compliance with the following conditions for Lots 9, 10, and 11 in Crooked Creek development so that the Schreibers' property is not damaged by storm water runoff from these Lots: a) the diversions channels on the Erosion Control Plan (Diversions 1, 2, 3, and 4) shall be graded and maintained; b) sediment traps A and B shall be repaired so storm water is discharged over the rock weirs instead of around the traps; c) sediment traps A and B shall be enlarged to meet their design volume; d) vegetation within 25-feet of the creek shall be restored; and e) post-construction storm water management ponds shall be installed so the post-construction peak rate of discharge is lower than or does not exceed the pre-construction peak rate of discharge, with sizing criteria based on water quality protection, channel protection, overbank flood protection, and extreme flood protection.

137.

The parcels identified as Lots 1 and 2 on the Crooked Creek development Erosion Control Plan are described as: "all that tract or parcel of land, together with all improvements thereon, situate, lying and being in the State of Georgia, County of Putnam, located in G.M.D. 313, being a recombination and division of Tax Parcel Id Nos. 110D046 and

110D049, and being TRACT #3 as depicted and shown on that certain Survey for: Jamie P. Key filed and recorded in the Real Estate Records of Putnam County, Georgia in Plat Book 36, Page 214, and consisting of approximately 1.579 acres."

138.

The parcels identified as Lots 1 and 2 on the Crooked Creek development Erosion Control Plan were conveyed to Jamie Key by Quitclaim Deed, as recorded in Deed Book 1003, Pages 232-233, Putnam County, Georgia records.

139.

Lot 1 on the Crooked Creek development Erosion Control Plan is identified as 1117 Crooked Creek Road, Eatonton, Georgia 31024, according to the present system of numbering property in Putnam County, Georgia (Putnam County Parcel 110D049001).

140.

Lot 2 on the Crooked Creek development Erosion Control Plan is identified as 1119 Crooked Creek Road, Eatonton, Georgia 31024, according to the present system of numbering property in Putnam County, Georgia (Putnam County Parcel 110D049).

141.

The parcel identified as Lot 4 on the Crooked Creek development Erosion Control Plan is described as: "All that tract or parcel of land lying and being in GMD 313, Putnam County, Georgia, being Lot 2, containing 0.796 acres, more or less, as shown on that plat of survey for JAMES P. KEY, dated August 16, 2019, prepared by John F. Brewer &

Associates, certified by John F. Brewer, III, Ga. RLS No. 2915, and recorded at Plat Book 37, page 122 (was formerly part of Lot 7, Block A, of Crooked Creek Point Subdivision, recorded at Plat Book 6, pages 86-87), Putnam County, Georgia Records."

142.

Lot 4 on the Crooked Creek development Erosion Control Plan is identified as 101 Crooked Creek Drive, Eatonton, Georgia 31024, according to the present system of numbering property in Putnam County, Georgia (Putnam County Parcel 110D047).

143.

The parcel identified as Lot 5 on the Crooked Creek development Erosion Control Plan is described as: "All that tract or parcel of land lying and being in GMD 313, Putnam County, Georgia, being Lot 3, containing 0.694 acres, more or less, as shown on that plat of survey for JAMES P. KEY, dated August 16, 2019, prepared by John F. Brewer & Associates, certified by John F. Brewer, III, Ga. RLS No. 2915, and recorded at Plat Book 37, page 122 (was formerly part of Lot 7, Block A, of Crooked Creek Point Subdivision, recorded at Plat Book 6, pages 86-87), Putnam County, Georgia Records."

144.

Lot 5 on the Crooked Creek development Erosion Control Plan is identified as 105 Crooked Creek Drive, Eatonton, Georgia 31024, according to the present system of numbering property in Putnam County, Georgia (Putnam County Parcel 110D047002).

145.

The parcels identified as Lots 4 and 5 on the Crooked Creek development Erosion Control Plan were conveyed to James P. Key by Quitclaim Deed, as recorded in Deed Book 937, Pages 217-218, Putnam County, Georgia records. These parcels are a portion of the land described therein at Exhibit A Tract Three.

146.

The parcels identified as Lots 6, 7, and 8 on the Crooked Creek development Erosion Control Plan are described as: "All that tract or parcel of land, together with all improvements thereon, situate, lying and being in the State of Georgia, County of Putnam, located in G.M.D. 313, being a recombination and division of Tax Parcel Id Nos. 110D046 and 110D047, and being TRACT #1 as depicted and shown on that certain Survey for: James P. Key filed and recorded in the Real Estate Records of Putnam County, Georgia in Plat Bock 36, Page 214, and consisting of approximately 2.926 acres."

147.

The parcels identified as Lots 6, 7, and 8 on the Crooked Creek development Erosion Control Plan were conveyed to Jamie Key by Quitclaim Deed, as recorded in Deed Book 1003, Pages 230-231, Putnam County, Georgia records.

148.

Lot 6 on the Crooked Creek development Erosion Control Plan is identified as 107 Crooked Creek Drive, Eatonton, Georgia 31024, according to the present system of numbering property in Putnam County, Georgia (Putnam County Parcel 110D046002).

149.

Lot 7 on the Crooked Creek development Erosion Control Plan is identified as 113 Crooked Creek Drive, Eatonton, Georgia 31024, according to the present system of numbering property in Putnam County, Georgia (Putnam County Parcel 110D046001).

150.

Lot 8 on the Crooked Creek development Erosion Control Plan is identified as 119 Crooked Creek Drive, Eatonton, Georgia 31024, according to the present system of numbering property in Putnam County, Georgia (Putnam County Parcel 110D046).

151.

The parcels identified as Lots 9, 10, and 11 on the Crooked Creek development Erosion Control Plan are described as: "All that tract or parcel of land, together with all improvements thereon, situate, lying and being in the State of Georgia, County of Putnam, located in G.M.D. 313, being designated as Lot 5, Block A, containing 2.989 acres, more or less, according to a plat of survey entitled, "Plat of Property of Larry K. Taylor," dated May 28, 1991, prepared by Robert H. Harwell. Georgia registered Land Surveyor No. 1683, recorded in Plat Book 19, page 28. Putnam County, Georgia records."

<center>152.</center>

The parcels identified as Lots 9, 10, and 11 on the Crooked Creek development Erosion Control Plan were conveyed to Jamie Key by Quitclaim Deed, as recorded in Deed Book 1003, Pages 234-235, Putnam County, Georgia records.

<center>153.</center>

Lot 9 on the Crooked Creek development Erosion Control Plan is identified as 121A Crooked Creek Drive, Eatonton, Georgia 31024, according to the present system of numbering property in Putnam County, Georgia (Putnam County Parcel 110D045002).

<center>154.</center>

Lot 10 on the Crooked Creek development Erosion Control Plan as 121B Crooked Creek Drive, Eatonton, Georgia 31024, according to the present system of numbering property in Putnam County, Georgia (Putnam County Parcel 110D045).

<center>155.</center>

Lot 11 on the Crooked Creek development Erosion Control Plan is identified as 121C Crooked Creek Drive, Eatonton, Georgia 31024, according to the present system of numbering property in Putnam County, Georgia (Putnam County Parcel 110D045001).

<center>**Requested Relief**</center>

Plaintiffs respectfully request the following relief:

a.      A judgment finding that defendant violated and is in violation of the Clean Water Act.

b.    An injunction requiring defendant to take all actions necessary to cease the discharge of storm water from the Crooked Creek development site except in compliance with the General Permit and the Georgia Stormwater Management Manual.

c.    An injunction requiring defendant to take all actions necessary to ensure there will be no further damage to plaintiffs' property.

d.    An injunction to ensure compliance with the following conditions for Lots 1, 2, 4, 5, 6, 7, and 8 in Crooked Creek development so that the Schreibers' property is not damaged by storm water runoff from these lots: a) each Lot shall be designed to include gutters and downspouts that are engineered to capture rainwater; b) rainwater shall be directed through below grade drain tiles for collection in underground cisterns on each Lot (which may be used for irrigation, car washing, and other outdoor uses); and c) an overflow orifice shall be installed which controls velocity from each cistern and is tied into a common bio-retention area or retention area for the entire development.

e.    An injunction to ensure compliance with the following conditions for Lots 9, 10, and 11 in Crooked Creek development so that the Schreibers' property is not damaged by storm water runoff from these Lots: a) the diversions channels on the Erosion Control Plan (Diversions 1, 2, 3, and 4) shall be graded and maintained; b) sediment traps A and B shall be repaired so storm water is discharged over the rock weirs instead of around the traps; c) sediment traps A and B shall be enlarged to meet their design volume; d) vegetation within 25-feet of the creek shall be restored; and e) post-construction storm water management ponds shall be installed so the post-construction peak rate of discharge is lower than or does not exceed the pre-construction peak rate of discharge, with sizing criteria based on water quality protection, channel protection, overbank flood protection, and extreme flood protection.

f.    Defendant be ordered to pay civil penalties for violating the Clean Water Act.

g.   Defendant be ordered to pay the costs of litigation to plaintiffs, including reasonable attorney and expert witness fees under 33 U.S.C. § 1365(d).

h.   A jury trial of all issues so triable.

i.   Plaintiffs be awarded from the defendant all damages compensable under Georgia law, including compensation for: plaintiffs' loss of use and enjoyment of their property, the cost to repair plaintiffs' property, the cost to repair the portions of Lake Sinclair damaged by sediment and storm water runoff from defendant's development site, decrease in property value, and the costs of litigation, including reasonable attorney and expert witness fees.

j.   Defendant be ordered to pay punitive damages in such amount as the jury concludes are sufficient to punish and deter defendant from the kind of wrongdoing described in this suit.

k.   Such other relief to which plaintiffs may be entitled at law or equity, as this Court deems just and appropriate.


Filed May 9, 2023.

/s/ Jon Schwartz

Jon Schwartz
Ga. Bar. No. 631038
*Attorney for Plaintiffs James Schreiber, Jr., and Brenda Schreiber*

**Law Office of Jon Schwartz**
1100 Peachtree St., N.E., Suite 250
Atlanta, GA 30309
404-667-3047
jon@jonschwartz.net

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

James Schreiber, Jr., and Brenda Schreiber

**DEFENDANTS**

Jamie P. Key

**(b)** County of Residence of First Listed Plaintiff    Gwinnett
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Walton
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Jon Schwartz, Law Office of Jon Schwartz 404-667-3047
1100 Peachtree St NE # 250, Atlanta, GA 30309

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1   U.S. Government
Plaintiff
- [x] 3   Federal Question
*(U.S. Government Not a Party)*
- [ ] 2   U.S. Government
Defendant
- [ ] 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*      *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | **LABOR** | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| | | | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 864 SSID Title XVI | [x] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
33 USC § 1365(a)

Brief description of cause:
Clean Water Act citizen suit with state law claims for damage to property

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*

JUDGE _____    DOCKET NUMBER _____

DATE
2023-05-09

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

# UNITED STATES DISTRICT COURT

for the

Middle District of Georgia

| | | |
|---|---|---|
| James Schreiber, Jr., and Brenda Schreiber | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Plaintiff(s)* | ) | |
| v. | ) | Civil Action No. |
| Jamie P. Key | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Jamie P. Key
2040 Dally Trail
Covington, Georgia 30014

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Jon Schwartz
Law Office of Jon Schwartz
1100 Peachtree St. NE, Suite 250,
Atlanta, Georgia 30309

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____                    _____

*Signature of Clerk or Deputy Clerk*