IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| BRENDA SCHREIBER, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) CIVIL ACTION NO. 5:23-CV-155 (MTT) |
| JAMIE P. KEY, *et al.*, | ) |
| Defendants. | ) |

## ORDER

Brenda and James Schreiber ("the Schreibers") brought this action against Jamie P. Key, alleging that he violated the Clean Water Act ("CWA") and various state laws by allowing stormwater to run off his development site into a cove near the Schreibers' property. Doc. 1. Key filed a third-party complaint against W&A Engineering, LLC ("W&A"), Connor Grading and Landscaping, Inc. ("Connor Grading"), and Holder Construction Demolition, LLC for indemnity, contribution, and breach of contract. Doc. 10. All parties moved for summary judgment. Docs. 51; 52; 54; 55; 56. The Court held a hearing on June 2, 2025, during which it resolved several of the pending motions. Doc. 89 at 1-2. Remaining for resolution are Key's motion for summary judgment regarding notice under the CWA (Doc. 55), Connor Grading's motion for summary judgment (Doc. 51), and W&A's motion for summary judgment (Doc. 52). For the following reasons, Key's motion for summary judgment (Doc. 55) is **DENIED** and Connor Grading and W&A's motions for summary judgment (Docs. 51; 52) are **DENIED** in part and **GRANTED** in part.

I. **BACKGROUND**[1]

Key owns a 9.7-acre development of residential lots near Lake Sinclair known as Crooked Creek. Docs. 55-1 ¶ 1; 56-2 ¶ 1; 67-1 ¶ 1; 68-7 ¶ 1. The Crooked Creek property is approximately 750 to 900 feet from Lake Sinclair. Docs. 56-2 ¶ 17; 68-7 ¶ 18. The Schreibers own two parcels of land on Lake Sinclair. Doc. 56-7. The Schreibers allege Key failed to maintain proper erosion control during the development of Crooked Creek, which caused sediment deposits in Lake Sinclair near their lots. Doc. 1 ¶¶ 27-155.

**A. Construction at Crooked Creek**

The CWA requires certain property owners to obtain a National Pollutant Discharge Elimination System ("NPDES") permit before discharging stormwater associated with construction activity. 33 U.S.C. §§ 1311, 1342; *see* Doc. 56-18 at 1. In Georgia, NPDES permits are issued by the Georgia Environmental Protection Division ("EPD"). Doc. 56-18 at 1. The NPDES permit requires contractors to complete work according to the "Manual for Erosion and Sediment Control in Georgia" drafted by the Georgia Soil and Water Conservation and a site-specific Erosion Sediment and Pollution Control Plan ("ESPCP"). *Id.* at 4.

Construction at Crooked Creek began in September 2021, when Key had the property logged. Doc. 54-3 ¶¶ 12, 21-25. In October 2021, Key contracted with W&A, an engineering company, to design an ESPCP. Doc. 52-1; *see* Doc. 53 ¶ 5. W&A

---

[1] The facts relevant to the third-party defendants' motions for summary judgment are primarily drawn from the parties' statements of material facts, some of which Key failed to contest, but only insofar as the facts are adequately supported by specific citations to the record. *See* Fed. R. Civ. P. 56(e)(2) and (3); M.D. Ga. L.R. 56.

completed Crooked Creek's proposed ESPCP in December 2021 and submitted the design for approval. Doc. 52-2 at 1. On February 24, 2022, Key filed a notice of intent for coverage under an NPDES permit. Doc. 56-6 at 1. On March 3, 2022, W&A's ESPCP was approved. *See* Doc. 52-3 at 2. On October 21, 2022, W&A submitted an updated ESPCP, which was approved on October 25. Docs. 52-6 at 1; 52-7. According to W&A, it "had no further involvement with the development after October 2022." Doc. 53 ¶ 9.

After the first ESPCP was approved, Key hired Connor Grading to remove stumps remaining on the property and to "install the erosion control measures shown in the W&A" ESPCP. Doc. 51-5 at 47:9-23; *see* Doc. 51-1 ¶ 4. Connor Grading began work at Crooked Creek "in early April, 2022." Doc. 56-20 ¶ 6. According to its responses to the Schreibers' interrogatories, "Connor Grading final billed the project on or about June 14, 2022." *Id.* ¶ 7. "All [of Connor Grading's] work was completed prior to that date, except for [a] pipe fitting." *Id*. It is unclear what occurred at Crooked Creek following W&A and Connor Grading's work on the property. But according to Key, "the lots known as Crooked Creek Development were covered in grass ground cover" by May 9, 2023. Doc. 55-1 at 3.

**B. Notice**

To comply with the CWA's presuit notice requirement, the Schreibers, on March 9, 2023, sent Key, and others, a letter informing Key of their intent to sue under the CWA. Docs. 1-1; 1-2. On May 9, 2023, 61 days after they mailed the notice letter, the Schreibers filed this action. Doc. 1. Specifically, the Schreibers sent copies of the letter by certified mail to the Georgia Environmental Protection Division, to the United States

Environmental Protection Agency, and to Key at 2040 Dally Trail in Covington, Georgia. Docs. 1-2 at 1; 67-5 ¶¶ 2-3, 7-8.  Key, at some point, lived at 2040 Dally Trail, and Key's notice of intent, his NPDES permit, and Crooked Creek's ESPCPs all list Key's address as 2040 Dally Trail ("The Permit Address").  *See* Docs. 52-2 at 1; 52-6 at 1; Doc. 55-3 ¶¶ 2, 3; 56-6 at 1.

The Schreibers also sent to Key two additional copies of the letter by priority mail, one to the Permit Address and the other to 199 Clubhouse Road in Eatonton, Georgia.  Doc. 1-2 at 2; 67-5 ¶ 7.  According to the tracking receipts, the copy of the notice letter sent by certified mail to Key at the Permit Address was returned to sender. Doc. 1-3 at 1.  The copies sent to 199 Clubhouse Road, the Georgia Environmental Protection Division, and the Environmental Protection Agency were all delivered.  Docs. 1-2 at 2; 1-5 at 1; 67-5 at 3.

Key claims he has lived at 199 Clubhouse Road since at least 2023, and that is why he did not receive the letter sent to the Permit Address.  Doc. 68-1 ¶¶ 3-4. However, Key admits that he received the notice letter sent by priority mail to 199 Clubhouse Road.[2]  *See* Doc. 90 at 22:7-8.

**C. Procedural Background**

On May 9, 2023, the Schreibers asserted four claims against Key: (1) violation of the CWA, (2) trespass, (3) nuisance, and (4) negligence.  Doc. 1.  Key then filed a third-

---

[2] In his brief in support of his motion for summary judgment, Key states that he never received notice. Doc. 55-2 at 7 ("[T]he 'recipient of notice must understand from the notice what the citizen is alleging' which would be impossible if the owner, such as in this case, never received notice at all.").  He now admits, and the evidence confirms, that he did receive a copy of the notice letter sent to 199 Clubhouse Road.  Docs. 1-2 at 2; 67-5 at 3; 90 at 22:5-14.

party complaint, asserting claims of common law indemnity, contribution, and breach of contract against Holder Construction, W&A, and Connor Grading.  Doc. 10.

After discovery closed, all parties moved for summary judgment.  Docs. 51; 52; 54; 55; 56.  Schreiber and Key both moved for summary judgment on the CWA claim only.  Docs. 55, 56.  The third-party defendants each moved for summary judgment on all claims against them.  Docs. 51; 52; 54.  On June 2, 2025, the Court held a motions hearing.  At the hearing, the Court denied the Schreibers' motion for summary judgment (Doc. 56) and granted Holder Construction's motion for summary judgment (Doc. 54).[3]  Docs. 89 at 1-2; 90 at 60:22-61:2.  The Court also denied in part Key's motion for summary judgment.  Docs. 89 at 1-2; 90 at 60:22-61:24.  Specifically, the Court ruled that genuine issues of fact remain regarding whether Key violated the CWA, but reserved ruling on whether the Schreibers provided proper notice of their CWA claims.  Docs. 89 at 1-2; 90 at 60:22-61:24.  The Court also reserved ruling on Connor Grading's and W&A's motions for summary judgment (Docs. 51; 52).

## II. STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is not genuine unless, based on the evidence presented, "a reasonable jury could return a verdict for the nonmoving party."  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir.

---

[3] Also before the Court were the Schreibers' motion to exclude the testimony of Key's expert (Doc. 58), David Huetter; the Schreibers' motion to exclude photographs and images in Key's second affidavit (Doc. 77); and Holder Construction's motion for sanctions (Doc. 86).  The Court denied the Schreibers' evidentiary motions (Docs. 58; 77) at the June 2, 2025 hearing.  Doc. 89 at 1-2; 90 at 39:8-25.  Holder Construction withdrew its motion for sanctions on June 26, 2025.  Doc. 96.

2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  "When the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim[]' in order to discharge this 'initial responsibility.'"  *Four Parcels of Real Prop.*, 941 F.2d at 1437-38 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Rather, "the moving party simply may 'show[ ]—that is, point[ ] out to the district court—that there is an absence of evidence to support the nonmoving party's case.'"  *Id.* (quoting *Celotex*, 477 U.S. at 324) (alterations in original).  Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial."  *Id.*

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing … relevant and admissible evidence beyond the pleadings."  *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324).  The non-moving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable or is not significantly probative' of a disputed fact."  *Id.* (quoting *Anderson*, 477 U.S. at 249-50).  Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court may consider the fact undisputed for purposes of the motion.  Fed. R. Civ. P. 56(e)(2).

However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. … The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### III. DISCUSSION

First, Key argues that the Schreibers failed to provide proper notice under the CWA.  Docs. 55-2 at 7; 74 at 1-4; 94.  The Court disagrees.

Next, the third-party defendants argue they are entitled to summary judgment on Key's indemnity, contribution, and breach of contract claims.  Docs. 51; 52.  Regarding indemnity, at this stage in the proceedings the Court cannot say, as a matter of law, that the third-party defendants are not required to indemnify Key should he be found liable at trial.  However, Connor Grading and W&A are entitled to summary judgment on Key's contribution and breach of contract claims because Key failed to respond to the parties' arguments and, thus, abandoned those claims.

**A. Clean-Water-Act Notice**

Under the CWA, "[n]o action may be commenced…prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator [of the EPA], (ii) to the state in which the alleged violation occurs, and (iii) to any alleged violator."  33 U.S.C. § 1365(b)(1)(A).[4]  "The 60-day waiting period serves as a 'mandatory condition precedent to the filing of a citizen suit under the [CWA].'" *Black Water Riverkeeper, Inc. v. Black Warrior Minerals, Inc.*, 734 F.3d 1297, 1299 (11th Cir. 2013) (quoting *Nat'l Env't Found. v. ABC Rail Corp.*, 926 F.2d 1096, 1097 (11th Cir. 1991)).  The CWA does not

---

[4] Key does not argue that the Schreibers' notice to the EPA and the Georgia Environmental Protection Division was deficient.

require a specific form of notice.  However, CWA regulations provide that presuit notice should be served "by certified mail addressed to, or by personal service upon, the owner or managing agent of the building, plant, installation, vessel, facility, or activity alleged to be in violation."  40 C.F.R. § 135.2(a)(1).  In the Eleventh Circuit, the notice requirement is "strictly construed to give the alleged violator the opportunity to correct the problem before a lawsuit is filed."  *Nat'l Parks and Conservation Ass'n, Inc. v. Tenn. Valley Authority*, 502 F.3d 1316, 1329 (11th Cir. 2007) (citing *Waterkeepers of Northern California v. AG Industrial Mfg., Inc.*, 375 F.3d 913, 916-17 (9th Cir. 2007); and *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60 (1987)).

For different reasons, the Schreibers and Key agree that the issue of sufficient notice can be resolved by the Court.  The Schreibers argue that the undisputed facts establish that Key received prescribed notice.  Doc. 95 at 1.  Key argues that the sufficiency of presuit notice under the CWA is a "mandatory legal question."  Doc. 94 at 2 (citing *Shark River Cleanup Coal. v. Township. of Wall*, 47 F.4th 126, 132-33 (3d Cir. 2022)).

The relevant facts are undisputed.  Key admits that he received notice at his claimed residential address, 199 Clubhouse Road, by priority mail.  *See* Doc. 90 at 22:7-8.  That letter was mailed on March 9, 2023.  Doc. 1-2 at 1-2.  According to 40 C.F.R. § 135.2(c), "[n]otice given in accordance with the provisions of this subpart shall be deemed to have been served on the postmark date."  And it is undisputed that the notice letter sent by certified mail to Key's Permit Address was returned as unclaimed.  Doc. 1-3 at 1.  Finally, it is undisputed that Key made no effort to change his address on his CWA permits and other required documentation.

Although the statute does not require a specific means of service, Key argues that this action must be dismissed for failure to provide adequate notice under 40 C.F.R. § 135.2 because the letter he received was sent by priority, not certified, mail.  Doc. 74 at 1.  Key does not cite, and the Court has not found, any authority dismissing a CWA claim when notice was sent, and received, by priority mail rather than certified mail.  However, the Eleventh Circuit has made clear that the purpose of strictly construing the CWA notice requirement is, first, "to give the alleged violator the opportunity to correct the problem before a lawsuit is filed."  *Nat'l Parks and Conservation Ass'n, Inc.*, 502 F.3d at 1329 (citing *Gwaltney of Smithfield, Ltd,* 484 U.S. at 60).  The second purpose of the notice requirement is to "allow[] government agencies to take responsibility for enforcing environmental regulations, thus obviating the need for citizen suits."  *Hallstrom v. Tillamook Cnty., 493 U.S. 20, 29* (1989) (citing *Gwaltney of Smithfield, Inc.,* 484 U.S. at 60-61).  Here, the record is clear that: (1) Key had actual notice of the Schreibers' suit and, thus, had the opportunity to correct any alleged CWA violations before suit was filed; and (2) the proper government agencies had 60 days' notice to intervene before the Schreibers filed suit.  Thus, the Schreibers' notice letters achieved the purpose of the CWA's 60-day notice requirement.

Finally, any confusion regarding Key's correct address was due to Key's failure to update his address on his permit records.  It may be, as Key argues, he has "lived only at 199 Clubhouse Road throughout 2023 and 2024."[5]  Doc. 68-1 ¶ 3.  Yet, when he filed his notice of intent for an NPDES permit in February 2022, he listed his address as

---

[5] Property and tax records for 199 Clubhouse Road list Key's spouse as the owner of the property.  Doc. 67-5 at 4-7.  No doubt the Schreibers thought that *might* be Key's residence, hence their belt and suspenders approach to satisfying the notice requirement.

2040 Dally Trail.[6]  Doc. 56-6 at 1.  His address is also listed as 2040 Dally Trail on both the original ESPCP plan, filed in December 2021, and the updated ESPCP plan, filed in October 2022.  Docs. 52-2 at 1; 52-6 at 1.  Key never updated those records.

In short, the Schreibers did exactly what they were supposed to do, and the mandates and intent of the CWA's notice requirement were satisfied.  Given the inconsistencies in Key's reporting of his address and Key's admission that he received actual notice, the Court concludes that Key had the required notice under the CWA.  Key's argument that his failure to update his Permit Address torpedoes the Schreibers' CWA claim fails.

Accordingly, the remaining issue—notice—in Key's motion for summary judgment (Doc. 55) is **DENIED**.

### B.  Third-party Defendants' Motions for Summary Judgment

Connor Grading and W&A argue they are entitled to summary judgment on Key's claims for indemnity, contribution, and breach of contract.  Docs. 51; 52.  The Court concludes that the third-party motions for summary judgment on Key's common law indemnity claims are premature.  However, the third-party defendants are entitled to summary judgment on Key's contribution and breach of contract claims.

*1. Connor Grading and W&A are not entitled to summary judgment on Key's common law indemnity claim*

Key argues that the third-party defendants' motions for summary judgment on his common law indemnity claim are premature because "the third-party complaint is rooted

---

[6] Upon filing the notice of intent, Key certified, under penalty of law, that "the information submitted" was "true, accurate, and complete."  Doc. 56-6 at 3.

in indemnity, and no determination on the underlying claims has been found." Doc. 93 at 4; s*ee also* Doc. 61. The Court agrees.

Georgia law defines indemnity as "the obligation or duty resting on one person to make good any loss or damage another has incurred by acting at his request or for his benefit." *Dist. Owners Ass'n, Inc. v. AMEC Env't & Infrastructure, Inc.*, 322 Ga. App. 713, 716, 747 S.E.2d 10, 13 (2013) (quoting *Douglas Asphalt Co. v. Ga. Dep't of Transp.,* 319 Ga. App. 47, 735 S.E.2d 86, 89 (2012)). Georgia law recognizes two types of indemnity: (1) "as created by contract," and (2) "under the common law of vicarious liability, as between principals and agents." *ALR Oglethorpe, LLC v. Fid. Nat'l Title Ins. Co*, 361 Ga. App. 776, 785; 863 S.E.2d 568, 577-78 (2021). Here, Key claims Connor Grading and W&A are liable for common law indemnity. Doc. 10 ¶¶ 38-45. A plaintiff may maintain an action for common law indemnity "if [he] is compelled to pay damages because of negligence imputed to him as a result of a tort committed by another."[7] *Dist. Owners*, 322 Ga. App. at 716, 747 S.E.2d at 13.

W&A contends that there are no genuine issues of material fact because its role was limited to designing the ESPCP, and there is no evidence that its design was deficient. Doc. 53-1 at 4. In its statement of material facts, W&A cites Key's testimony admitting that he does believe W&A's work was deficient. Docs. 53 ¶ 10; 52-8 at 16:6-11. However, even if Key does not admit that W&A's work was deficient, the Schreibers have provided evidence that the ESPCP was deficient and that W&A failed to complete the compliance checks required by the ESPCP. *See, e.g.,* Doc. 62-3 ¶ 10. And the Court has held that genuine issues of material facts exist on the Schreibers' CWA claim.

---

[7] W&A and Connor Grading do not argue that Key cannot seek indemnification of his potential liability for the Schreibers' statutory claim.

Further, at this point, the Court has addressed only the Schreibers' CWA claim. Docs. 89 at 1-2; 90 at 38:2-9. The Court has not addressed the Schreibers' trespass, negligence, and nuisance claims against Key. Therefore, the threshold indemnity inquiry—whether Key is "compelled to pay damages" to the Schreibers—will remain unanswered until trial. *Dist. Owners*, 747 S.E.2d at 13. Thus, for now, the Court cannot say as a matter of law that W&A has no obligation to indemnify Key should he be found liable at trial. *See Cajun Contractors v. Peachtree Prob. Sub, LLC*, 360 Ga. App. 390, 411, 861 S.E.2d 222, 242 (2021) (Upholding the trial court based in part on its conclusion "that the motion was 'premature' because there had not yet been 'a determination of the…Defendants' liability obligations.").

Connor Grading argues that Key cannot bring an indemnity claim against it because Georgia's "acceptance doctrine" bars Key's claims.[8] Docs. 51-2 at 12-15; 70; 91. If correct, Key would have no legal basis to assert a claim for indemnity. Under Georgia law, when "the work of an independent contractor is completed, turned over to, and accepted by the owner, the contractor is not liable to third persons for damages or injuries subsequently suffered by reason of the condition of the work." *Ogles v. E.A. Mann & Co., Inc.*, 277 Ga. App. 22, 24, 625 S.E.2d 425, 428 (2005) (quoting *Peachtree North Apartments Co. v. Huffman-Wolfe Co., et al.*, 126 Ga. App. 594, 594, 191 S.E.2d 485, 486 (1972)). Georgia courts have made clear that the acceptance doctrine applies

---

[8] The Schreibers filed a response to Connor Grading and W&A's motions for summary judgment to "request that this Court's ruling on these motions make clear it has no preclusive effect on state law claims the Schreibers may have against Conner or W&A, including claims for negligence, nuisance and trespass." Doc. 62 at 1. Connor Grading argues that the Schreibers lack standing to make such a request. Doc. 69. Although no authority cited by Connor Grading supports its contention that the Schreibers cannot respond to a third-party motion that could impact their claims, the Court declines to state what, if any, preclusive effect this order may have on future claims. The Schreibers' request (Doc. 62) is **DENIED**.

only to injuries that occur *after* the contractor has accepted the work.  See *Stopanio v. Leon's Fence and Guardrail, LLC*, 346 Ga. App. 18, 24, 815 S.E.2d 232, 238 (2018) (affirming the trial court's use of the acceptance doctrine because "no genuine issue of fact remain[ed] as to whether [the contractor] accepted the work tendered by the contractors prior to the accident") *overruled on other grounds by Dep't of Public Safety v. Ragsdale*, 308 Ga. 210, 215 n.8, 839 S.E.2d 541, 545 (2020); *Blondell v. Courtney Station 300 LLC*, 362 Ga. App. 1, 11, 865 S.E.2d 589, 599 (2021) ("Under the acceptance doctrine, liability shifts from the contractor to the property owner 'at the moment the work is turned over to and accepted by the owner.'" (quoting *Thomaston Acquisition, LLC v. Piedmont Constr. Group, Inc.*, 306 Ga. 102, 104, 829 S.E.2d 68, 71 (2019))).

Here, Key seeks indemnity for claims of injuries that occurred *before* Key accepted Connor Grading's work.  The Schreibers claim that, from March 11, 2022 until May 31, 2022, Key violated the Clean Water Act and various state laws by failing to install and maintain erosion control measures according to his NPDES permit, violating the CWA "on each day since March 11, 2022."  *See, e.g.,* Docs. 1 ¶ 44, 46-55; 56-2 ¶¶ 30-31, 35, 36-37, 42.  Thus, Key's indemnity claim encompasses claims for injuries that occurred as early as March 11, 2022.

Connor Grading's work at Crooked Creek began "in early April, 2022."  Doc. 56-20 ¶ 6.  There is no evidence of the precise date of acceptance, but Connor Grading states that it "final billed the project on or about June 14, 2022." *Id.* ¶ 7.  Accordingly, on this record, the earliest Key could have accepted Connor Grading's work is June 14, 2022.  Because Key's indemnity claim encompasses injuries occurring in the months

before Key accepted the work, the Court cannot rule as a matter of undisputed fact that the acceptance doctrine shields Connor Grading from liability.[9]

Thus, Connor Grading and W&A's motions for summary judgment on Key's indemnity claims are **DENIED**.

*2. Connor Grading and W&A are entitled to summary judgment on Key's contribution and breach of contract claims because Key has abandoned those claims*

Connor Grading and W&A both argue that they are entitled to summary judgment on Key's contribution and breach of contract claims. Docs. 53-1 at 6-7; 51-2 at 17. Key failed to respond to any arguments regarding his breach of contract or contribution claim. *See, e.g.,* Doc. 63 at 4 (stating that "the third-party complaint is rooted in indemnity" while failing to mention contribution or breach of contract.") Key has, thus, abandoned his contribution[10] and breach of contract claims. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in

---

[9] As best the Court can tell, no Georgia court has addressed whether the acceptance doctrine applies to direct actions brought by a contractor against a subcontractor, especially when that action is for indemnity. *See Norfolk S. Ry. Co. v. Railworks Maint. of Way, Inc.*, 2023 WL 5984282 at *12 n.9 (E.D. Va. Sept. 14, 2023) ("[T]he Georgia Supreme Court has not specifically addressed whether the acceptance doctrine applies where one contractor sues another for negligent construction"). However, Georgia courts have frequently stated that the acceptance doctrine shields sub-contractors from liability "to third persons." *E.g. Ogles,* 277 Ga. App. at 24, 625 S.E.2d at 428*; Bragg v. Oxford Constr. Co.*, 289 Ga. App. 638, 640-41, 658 S.E.2d 198 (2008). Thus, it is questionable whether the acceptance doctrine applies to Key's direct claim against Connor Grading.

[10] At any rate, Georgia's apportionment statute provides that "[d]amages apportioned by the trier of fact…shall not be subject to any right of contribution." O.C.G.A. § 51-12-33(b). Thus, presumably, Key would not be entitled to contribution anyway, at least for the Schreibers' tort claims. *See District Owners,*, 322 Ga. App. at 718, 747 S.E.2d at 14 (affirming the general principle of law that "the plain language of O.C.G.A. § 51-12-33(b) requires the factfinder to apportion liability between the defendant and the third-party defendant, and neither has the right of contribution against one another." (quoting *Murray v. Patel*, 304 Ga. App. 253, 255, 696 S.E.2d 97, 99 (2010))); *McReynolds v. Krebs,* 307 Ga. App. 330, 334, 705 S.E.2d 214, 217 (2010) ("Finally, [O.C.G.A. § 51-12-33(b)] provides that when apportionment is required by the Code section, the defendants have no right of contribution").

summary judgment are deemed abandoned." (citing *Blue Cross & Blue Shield v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990))).

Accordingly, Connor Grading and W&A's motions for summary judgment on Key's breach of contract claim are **GRANTED**.

## IV. CONCLUSION

For the foregoing reasons, the remaining portion of Key's motion for summary judgment is **DENIED**.  Connor Grading and W&A's motions for summary judgment on Key's indemnity claims are **DENIED.**  Connor Grading and W&A's motions for summary judgment on Key's contribution and breach of contract claims are **GRANTED**.

**SO ORDERED**, this 29th day of July, 2025.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT