**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **BRENDA SCHREIBER, *et al.*,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:23-cv-155 (MTT)** |
| | ) | |
| **JAMIE P. KEY, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## ORDER

Plaintiffs Brenda and James Schreiber filed this action against Jamie Key on May 9, 2023, alleging that he violated the Clean Water Act ("CWA") and various state laws by allowing stormwater to run off his development site into a cove near the Schreibers' property. ECF 1. Key filed a third-party complaint against W&A Engineering, LLC ("W&A"), Connor Grading and Landscaping, Inc. ("Connor Grading"), and Holder Construction Demolition, LLC for indemnity, contribution, and breach of contract. ECF 10. Schreiber and Key both moved for summary judgment on the Schreiber's CWA claim. ECF 55; 56. The Court concluded that there were genuine issues of material fact whether Key violated the CWA. ECF 97. After a five-day trial, the jury found that Key did not violate the CWA and that he was not liable under Georgia law for damage to the Schreibers' property. ECF 148. The Schreibers have moved for a new trial under Rule 59(a) of the Federal Rules of Civil Procedure. ECF 155. For the following reasons, the Schreibers' motion for a new trial (ECF 155) is **DENIED**.

## I. DISCUSSION

The Schreibers argue that the jury's verdict on their CWA claim was against the clear weight of the evidence and that the Court's jury instruction on the definition of "pollutant" under the CWA was erroneous. ECF 155-1. The Court may grant a new trial following a jury verdict "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "[U]nder Rule 59(a), a district court may, in its discretion, grant a new trial 'if in [the court's] opinion, the verdict is against the clear weight of the evidence . . . or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *McGinnis v. American Home Mortgage Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016) (quoting *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984)). But "'[t]he district judge should not substitute his own credibility choices and inferences for the reasonable credibility choices and inferences made by the jury.'" *Redd v. City of Phenix City, Ala.*, 934 F.2d 1211, 1215 (11th Cir. 1991) (quoting *Rosenfield v. Wellington Leisure Products, Inc.*, 827 F.2d 1493, 1498 (11th Cir.1987)). "When there is some support for a jury's verdict, it is irrelevant what ... the district judge would have concluded." *Id.*

## A.  The Jury's Verdict was not Against the Clear Weight of the Evidence

The jury found that Key did not discharge a pollutant into waters of the United States and thus did not violate the CWA. ECF 148 at 1. The Schreibers argue that the jury's verdict is against the clear weight of the evidence. ECF 155-1 at 3-13. For the jury to find that Key did not discharge a pollutant into waters of the United States, they must have concluded either that (1) Key did not discharge a pollutant, in this case polluted

stormwater, into the Schreibers' cove, or (2) that the "tributary stream" at issue was not waters of the United States and that any stormwater runoff from Key's property was not the functional equivalence of a direct discharge into waters of the United States. There was sufficient evidence to support either conclusion.

Key presented evidence that he did not discharge pollutants into the Schreibers' cove. Specifically, Key provided photographic evidence of the drained cove from 2020 and 2025 that showed little to no sediment buildup in the Schreibers' cove, and he presented both testimony and photographic evidence that stormwater runoff entered the Schreibers' cove from sources other than Key's property. Moreover, Key's expert's testimony differed from the Plaintiffs' experts, creating credibility questions for the jury to resolve. Thus, sufficient evidence was presented that Key did not discharge polluted stormwater into the Schreibers' cove.

Key also produced photographs and testimony from which the jury could have found that the "tributary stream," which the Schreibers argued flowed from Key's property into their cove, did not continuously flow and, therefore, was not waters of the United States. And regarding the functional equivalence doctrine, there was sufficient evidence for the jury to conclude that discharge from Key's property was not the "functional equivalent of a direct discharge" into waters of the United States. The functional equivalence inquiry required the jury to consider multiple factors, and although the Schreibers contend their expert's testimony shows that "every factor favors Plaintiffs," Key pointed to credibility issues with the expert's opinion. ECF 155-1 at 7. And, again, Key presented evidence that stormwater runoff from his property did not affect the Schreibers' cove or, at least, that there were other potential sources of

-3-

polluted stormwater runoff. Thus, despite the existence of evidence to the contrary, the jury had sufficient evidence to conclude that Key did not discharge pollutants into the waters of the United States.

## B. The Court's Jury Instruction on the Rainwater as a Pollutant under the CWA Does Not Warrant a New Trial

The Schreibers also argue that the Court erred by instructing the jury that a pollutant "*may* … include rainwater that flows from a site where land disturbing activities have been conducted, such as grading and clearing." ECF 155-1 at 10 (emphasis added); *see* ECF 152 at 5. The Schreibers assign error to the Court's use of the word "may," arguing the Court should have instructed the jury that "the term pollutant includes rainwater that flows from a site where there has been construction activity with at least one acre of land disturbance." ECF 155-1 at 11.

First, the Schreibers' requested instruction is not an accurate statement of the law. The Schreibers' requested instruction confuses the CWA's definition[1] of "pollutant" with the requirement that a permit must be obtained to discharge stormwater on a site where there has been at least one acre of land disturbance. *See* ECF 151-73 at 9; 40 C.F.R. 122.26(b)(14)(x), (15)(1). But whether rainwater or stormwater falls within the definition of a "pollutant" under the CWA is a different question than whether, or when, one must obtain a permit to discharge stormwater under the CWA. The direct effect of the Schreibers' requested instruction is that if they have proven that one acre of land

---

[1]Neither the CWA nor the relevant regulations include rainwater in their definition of pollutant. 33 U.S.C. § 1362(6) provides: "[t]he term 'pollutant' means dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt, and industrial, municipal, and agricultural waste discharged into water."  40 C.F.R. § 122.2 provides a nearly identical definition. The Environmental Protection Agency has promulgated regulations concerning stormwater discharges, but those regulations discuss when permits are necessary for stormwater discharge, not whether stormwater discharge is a pollutant under the CWA. *See* 40 C.F.R. § 122.26.

disturbance occurred, then they have proven that any rainwater that flowed from Key's development site was a pollutant under the CWA. That is contrary to the definition of pollutant under the CWA, and it is not supported by the Schreibers' cited authority, *Driscoll v. Adams*, 181 F.3d 1285, 1291 (11th Cir. 1999).[2] In *Driscoll*, the Eleventh Circuit concluded that "rainwater that flows from a site where land disturbing activities have been conducted, such as grading and clearing," falls within the description of "pollutant" under the CWA. 181 F.3d at 1291 (quoting *Huey v. JMS Dev. Corp.*, 78 F.3d 1523, 1524 n.1 (11th Cir. 1996)). But the court in *Driscoll* came to that conclusion because of the constituents that the rainwater carried to the plaintiff's pond—sand and silt. *Id. Driscoll* does not state that rainwater is necessarily a pollutant if it flows from a site where at least one acre of disturbance has occurred and, thus, the Schreibers' requested instruction was not an accurate statement of the law.

Rather than give the Schreiber's incorrect instruction, the Court gave an instruction that was taken, at least in part, from *Driscoll* and *Hughey*, and that was tailored to the evidence presented at trial. The Eleventh Circuit in *Hughey* stated that rainwater falls within the definition of a pollutant if it "flows from a site where land disturbing activities have been conducted, such as grading and clearing." 78 F.3d at 1524 n.1. Thus, the Court instructed the jury that pollutant "may … include rainwater that flows from a site where land disturbing activities have been conducted, such as grading and clearing." ECF 152 at 5. The Court's use of the word "may" does not create an inaccurate statement of law or mislead the jury; it simply reflects the reality that

---

[2] *Driscoll* was not a case involving jury instructions.

-5-

whether rainwater is a pollutant depends on whether it carries silt, sediment, or some other pollutant under the CWA.

Finally, the Schreibers waived their argument that the Court's use of the word "may" was improper because they did not timely object. The Schreibers argue that they properly assigned error to the Court's instruction under Rule 51(d)(1)(B) because they requested an instruction that pollutant "includes rock, sand, and rainwater that flows from a site where there has been construction activity with at least one acre of land disturbance," and that request was denied. ECF 157 at 8-9.  However, "offering a proposed charge … does not preserve an objection to the giving of a different charge." *Electro Servs. V. Exide Corp.*, 847 F.3d 1524, 1529 (11th Cir. 1988). This is particularly true when the requested instruction is an inaccurate statement of the law. Rule 51(d)(1) provides two methods of assigning error depending on whether the error is: "(A) an error in an instruction is actually given;" or "(B) a failure to give an instruction." Fed. R. Civ. P. 51(d)(1). Here, the Schreibers assign error to the Court's use of "may" in the actual instruction given and, thus, unless the instruction is plain error, they must have "properly objected" to now assign error. *Id.*; Fed. R. Civ. P. 51(d)(2); s*ee United States v. Maradiaga*, 987 F.3d 1315 (11th Cir. 2021); *United States ex rel. Tva*, 2018 U.S. Dist. LEXIS, 218684 (N.D. Ga. Dec. 20, 2018).

At the charge conference, the Court declined to give the Schreibers' requested incorrect instruction, and a lengthy discussion with counsel followed regarding how to best instruct the jury on the meaning of "pollutant" under the CWA. The Court later provided counsel with a final copy of the jury instructions, which stated that a pollutant "may … include rainwater that flows from a site where land disturbing activities have

-7-

been conducted, such as grading and clearing." ECF 152 at 5. When the Court asked if either party had objections, the Schreibers' counsel raised other concerns, but failed to object to the Court's use of the word "may." Thus, the Schreibers did not properly preserve their objection, and a new trial should only be granted if the instruction was plain error. For the reasons already stated, the Court concludes that its instruction regarding pollutant under the CWA was not plain error. And even if the Schreibers had properly objected, the Court would still conclude that the instruction was not erroneous and does not warrant a new trial.

## II. CONCLUSION

In sum, the Court concludes that the jury's verdict was not against the clear weight of evidence, and no miscarriage of justice occurred. Accordingly, the Schreibers' motion for a new trial (ECF 155) is **DENIED**.

**SO ORDERED**, this 14th day of May, 2026.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT